UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

AMERICAN ACQUISITIONS, LLC,

Plaintiff,

JOSEPH J. BIANCO,
BRUCE RABEN,
MANUEL FERNANDEZ, AND
CRAIG ELLINS,

Defendants.

Civil Action No. 08-cv-000173

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

The plaintiff, American Acquisitions, LLC ("American") asserts this Complaint and Demand For Jury Trial (the "Complaint") against defendants, Joseph J. Bianco, Bruce Raben, Manuel Fernandez and Craig Ellins (individually "Bianco", "Raben", "Fernandez", "Ellins"; collectively "defendants").

### INTRODUCTION

1.      This lawsuit arises out of a payment dispute between LINC Acquisition One, LLC ("LINC") and defendants.  Defendants executed Guaranty Agreements, as Guarantors, in favor of Connecticut Bank of Commerce (the "Bank") guaranteeing the obligations of Hellonetwork.com, Inc. ("HNI") pursuant to the terms of a certain Credit Agreement dated October 17, 2000.

2.      Following a reorganization of HNI in the United States Bankruptcy Court for the Southern District of New York, LINC acquired the Bank's right to recover any monies due from the defendants.

3.      LINC and defendants executed a Settlement Agreement and Mutual Release ("Agreement"), which incorporated a Promissory Note ("Note"), in which defendants, jointly and severally, agreed to pay to LINC $300,000.00, plus interest.

4.      LINC assigned the right to payment on the Agreement and Note to American.

5.      Defendants have failed to make all payments due under the Agreement and Note, and accordingly, there exists an unpaid balance in excess of $75,000.00 that presently remains due and owing to American as of the date of this Complaint.

## PARTIES, JURISDICTION AND VENUE

6.      The plaintiff, American, is a Massachusetts limited liability company, with its principal place of business at 7 Harvard Street, Brookline, MA 02445.

7.      Upon information and belief, the defendant, Joseph J. Bianco, is an individual residing at 130 Fifth Avenue, 7th Floor, New York, NY 10011.

8.      Upon information and belief, the defendant, Bruce Raben, is an individual residing at 9601 Wilshire Blvd., Penthouse, Los Angeles, CA 90210.

9.      Upon information and belief, the defendant, Manual Fernandez, is an individual residing at 650 Water Street, SW, Washington, D.C. 20024.

10.      Upon information and belief, the defendant, Craig Ellins, is an individual residing at 3035 East Patrick, Suite 1, Las Vegas, NV 89120.

11.     This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. §1332 as the amount in controversy exceeds $75,000, exclusive of interest and costs, and this matter involves a dispute between citizens of different states.

12.     Venue is proper in this jurisdiction district pursuant to 28 U.S.C. §1391(a), as a substantial part of the events or omissions giving rise to American's claims occurred in this judicial district.

13.     Additionally, the parties have specifically agreed to submit to the jurisdiction and venue of the United States Court for the Southern District of New York in any action relating to the Agreement and/or the Note.

## STATEMENT OF FACTS

14.     On or about October 17, 2000, the defendants, as Guarantors, executed Guaranty Agreements in favor of Connecticut Bank of Commerce guaranteeing the obligations of Hellonetwork.com, Inc.

15.     HNI filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the Southern District of New York, Docket No. 04-11134.

16.     As part of the reorganization plan, on or about September 15, 2005 LINC and the defendants (as Guarantors of HNI) executed an Agreement, with incorporated Note, wherein defendants promised to pay to LINC the sum of $300,000.00, payable in increments of $9,000.00 per month, with an interest rate of eight and one-half (8 1/2) percent per annum, until said Note was paid in full.  A copy of the Agreement, with attached Note, are attached to this Complaint as Exhibit A.

17.     The Agreement stated that it "shall not be modified in any way unless any such modification, amendment, addendum or supplement is in writing and is signed by

3

all the Parties to this Settlement Agreement and Mutual Release." No further agreement or contract was ever executed between the parties, leaving the Agreement as the sole agreement executed by LINC and the defendants.

18.    LINC assigned to American the right to payment under the Agreement and Note.

19.    The defendants have made some payments under the terms of the Agreement; however, they have failed to make all payments required under the Agreement leaving an unpaid balance due and owing to American as of the date of this Complaint.

20.    American has demanded that defendants pay the outstanding Agreement balance; however, defendants have refused and/or neglected to pay amounts when due.

### COUNT I: BREACH OF CONTRACT

21.    American realleges and reaffirms the allegations of Paragraphs 1 through 20 of this Complaint as if each and every allegation thereof is fully set forth herein.

22.    LINC and the defendants entered into a binding agreement whereby defendants agreed, *inter alia*, to pay $300,000.00, plus interest, to LINC in consideration for LINC's settlement with and release of the defendants from their obligations as guarantors.

23.    LINC performed under the agreement by releasing the defendants from their obligations as guarantors, and has completed all requirements for payment.

24.    LINC assigned the right to payment under the Agreement to American.

25.    The defendants materially breached the Agreement by failing to pay all of the contractual sums when due.

26.     The Agreement requires the defendants to pay American's attorneys' fees and costs in enforcing the Agreement.

27.     American has incurred significant damage as a direct result of the defendants' breaches, including, but not limited to direct, indirect and consequential damages, interest and attorneys' fees.

28.     The defendants must therefore pay to American the outstanding balance due under the Agreement, plus interest, attorneys' fees, and costs.

THE PLAINTIFF HEREBY DEMANDS A JURY TRIABLE ON ALL ISSUES SO TRIABLE

WHEREFORE, American respectfully requests that this Honorable Court:

A.      Enter judgment in favor of American;

B.      Order Joseph J. Bianco, Bruce Raben, Manuel Fernandez and/or Craig Ellins, jointly and severally, to pay American a sum in the amount of its contractual obligation;

C.      Award American costs, interest and attorneys' fees; and

D.      Award such other relief as this Court deems just.

Respectfully submitted,

AMERICAN ACQUISITIONS, LLC

By its attorneys:

Robert B. Smith, Esq. (#RS2827)
Nelson, Kinder, Mosseau & Saturley, P.C.
45 Milk Street
Boston, MA 02109
617-778-7500
rsmith@nkms.com

Dated:  February 5, 2008

EXECUTION COPY

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release (this "Agreement and Release") is entered into as of the 15th day of September 2005, by and among **LINC ACQUISITION ONE, LLC.,** a limited liability company organized under the laws of Delaware ("Linc") and **JOSEPH J. BIANCO, BRUCE RABEN, MANUEL FERNANDEZ AND CRAIG ELLINS** (each of whom is hereinafter referred to, individually, as a "Guarantor" and who are referred to, collectively, as the "Guarantors").

In consideration of the mutual promises and undertakings of the parties hereto, all as set forth herein below, and for other good and valuable consideration, receipt of which is hereby acknowledged by Linc and each of the Guarantors, Linc and each of the Guarantors agree and covenant as follows:

### ARTICLE I. DEFINITIONS

1.1     "Claims" means any and all actions, causes of action, suits, liabilities, fines, penalties, damages, judgments, claims, cross-claims and demands of every kind and nature, whether in law or in equity, whether known or unknown, which currently exist or may exist in the future, that were or could have been asserted in regard to any action or omission occurring prior to the execution date of this Agreement and Release, based on the Guaranty Agreements and/or Original Note, by any party hereto against the other (or their direct and/or indirect, affiliates, successors, or assigns) but does not include any matters arising from conduct occurring after the execution date of this Settlement Agreement and Mutual Release.

1.2     "Guaranty Agreements" means the four Guaranty Agreements executed by each of the Guarantors, respectively, in favor of Connecticut Bank of Commerce (the "Bank"), guaranteeing the obligations of Hellonetwork.com, Inc. ("HNI") to the Bank pursuant to the Credit Agreement dated October 17, 2000, by and between HNI and the Bank.

1.3     "Original Note" means that Note dated October 17, 2000 executed by HNI in favor of the Bank.

1.4     "Holder" means Linc and any and all of its affiliates, members, officers and directors.

1.5     "Releasing Parties" means Holder and the Guarantors.

1.6     "Reorganization" means that reorganization of HNI pursuant to a Plan of Reorganization confirmed by the United States Bankruptcy Court for the Southern District of New York in that current proceeding captioned In re: Hellonetwork.com, Inc. Chapter 11, Case # 04-11134 (the "Bankruptcy Proceeding").

1

1.7   "Newco" means the successor to HNI pursuant to the Reorganization, which shall be at least fifty percent (50%) owned by the Guarantors.

1.8   "Legal Balance" means the balance due under the Original Note, which, as of September 15, 2005 is equal to $2,626,102.27, as such amount may be reduced by payments hereunder.

1.9   "Final Settlement Date" means the day on which the Legal Balance is paid in full.

## ARTICLE II. THE FINANCIAL SETTLEMENT

2.1   <u>Settlement.</u>  In full and complete satisfaction of the obligation of each and all of the Guarantors under the Guaranty Agreements, Guarantors shall deliver to Holder the following:

(i)   No later than October 15, 2005, the sum of Four Hundred Fifty Thousand ($450,000.00) Dollars in the form of a bank check or a wire transfer.

(ii)   Simultaneously with the execution hereof, a note (the "Note") signed by Guarantors, jointly and severally, in the principal amount of Three Hundred Thousand ($300,000.00) Dollars, payable at Nine Thousand ($9,000.00) Dollars per month until fully paid, bearing interest at eight and one-half (8½ %) percent per annum, which Note may be prepaid without penalty or premium.  All payments received on the Note shall first be applied to interest due and thereafter to principal.  A *pro forma* copy of the Note is attached hereto as Schedule A.

The payment made under Section 2.1(i) and all principal payments made under Section 2.1(ii) shall be credited against the Legal Balance.

2.2   <u>Payments.</u>   The obligation of the Guarantors to make payments as required under the Note shall be independent of the occurrence of the events described in Article III hereof.

## ARTICLE III. CERTAIN TERMS AND CONDITIONS

3.1   Subject to any applicable fiduciary duties, Guarantors shall use commercially reasonable good faith efforts, pursuant to the Reorganization to:

(i)   cause to be submitted and confirmed a plan of reorganization ("Plan of Reorganization") which provides for (a) the preservation of HNI's net operating loss carryforwards ("NOL"), (b) the acquisition of HNI by Newco, the equity of which will be at least five percent (5%) owned by the existing holders of preferred stock and the creditors of HNI, and (c) full satisfaction of the Legal Balance by Newco following its acquisition of HNI.

(ii)   invest new working capital in Newco as provided in the Plan of Reorganization, and, following Newco's acquisition of HNI, continue its operation as a developer of new wired and wireless technology.

(iii)   following Newco's acquisition of HNI, until the Final Settlement Date, cause Newco to pay to Holder, within ninety (90) days following the close of Newco's taxable year (as established for federal tax purposes) fifty percent (50%) of Newco's Tax Savings. "Tax Savings" shall mean the difference between all federal, state and city income taxes owed by Newco as calculated by its regularly employed independent accountants using techniques consistently employed as to each taxable year without giving effect to any NOL, and such sum after giving effect to such NOL and otherwise consistently employing the same techniques. Payment of the Tax Savings shall be accompanied by a statement prepared by Newco's regularly employed independent accountants setting forth the basis on which the Tax Savings were determined. All such Tax Savings payments shall be credited against the Legal Balance.

(iv)   until the Final Settlement Date, cause Newco to pay to Holder, immediately following receipt, fifty (50%) percent of its Existing Technology Exploitation Income. "Existing Technology Exploitation Income" shall mean the net proceeds paid to Newco from the sale, lease, license or other disposition or exploitation of the wireless and wired technology owned by Newco as of the date of confirmation of the Plan of Reorganization. In distinction, Holder will not be entitled to share in the proceeds from the sale, lease, license or other disposition of wireless and wired technology developed by Newco from and after the date of confirmation of the Plan of Reorganization, or otherwise contributed to Newco (directly, or as an asset of an entity whose operations are being merged with those of Newco). The payments due and to become due under this Section 3.1(iv) are distinct from and shall not include any payments made to Holder attributable to payments received by HNI during the Bankruptcy Proceeding, or Newco thereafter, from Real Network (pursuant to that agreement between HNI and Real Network terminating on or about August 31, 2005; the "Real Network Agreement"). All payments made to Holder from Existing Technology Exploitation Income and under the Real Network Agreement shall be credited against the Legal Balance. Newco's chief financial officer shall annually certify to Holder the amount, if any, due under this subparagraph (iv).

(v)   to provide to Holder a security interest in the technology assets acquired by Newco from HNI to collateralize all amounts payable to Holder hereunder.

(vi)   cause Newco to immediately turn over to Holder any sums received by Newco pursuant to the Real Network Agreement, which amounts shall reduce the Legal Balance.

ARTICLE IV. REMEDIES

4.1   Sole and Exclusive Remedy. The Guaranty Agreements are now, hereafter and forever null, void and unenforceable. This Settlement Agreement and Mutual Release is the sole and exclusive basis for any and all claims that may be alleged or asserted by any party against another party, in regard to the Guaranty Agreements and/or the Original Note.

## ARTICLE V. RELEASES

5.1     <u>Mutual Release</u>.  The Releasing Parties each agree that this Settlement Agreement and Mutual Release is a full and final release of any and all Claims.  Upon execution of this Settlement Agreement and Mutual Release by the Releasing Parties, and for other good and valuable consideration, the sufficiency and receipt of which the Releasing Parties each hereby acknowledge: (i) Holder and Holder's respective successors and assigns, release and forever discharge Guarantors and their respective successors and assigns, agents, advisors, legal representatives and insurers, from any and all Claims and from any relief whatsoever, in law or in equity, in contract or in tort or under the common law, or any state or federal statute or otherwise for or on account of any Claim, whether known or unknown, that Holder, individually or collectively, ever had, has, or may have in the future against any of the Guarantors from such Claims; and (ii) the Guarantors, and their respective successors and assigns, release and forever discharge Holder, each individually and on behalf of their respective successors, and assigns, directors, shareholders, investors, employees, agents, advisors, legal representatives, members, principals and insurers, from any and all Claims and from any relief whatsoever, in law or in equity, in contract or in tort or under the common law, or any state or federal statute or otherwise for or on account of any Claim, whether known or unknown, that Guarantors, individually or collectively, ever had, has, or may have in the future against Holder from such Claims.  Anything to the contrary contained herein notwithstanding, the Releases provided for hereunder shall not extend to any breaches of this Agreement or the Note.

## ARTICLE VI. MISCELLANEOUS PROVISIONS

6.1     <u>Complete Agreement</u>.  The Parties intend this Settlement Agreement and Mutual Release to be the complete expression of their agreement relating to the matters addressed herein.  There are no oral agreements, representations, warranties or promises between the Parties that differ from, alter, contradict or expand the terms of this Settlement Agreement and Mutual Release.  None of the Parties have made any inducements, promises, warranties or representations to any other in connection with entering into this Settlement Agreement and Mutual Release, except to the extent specifically set forth herein.

6.2     <u>Representation by Counsel</u>.  In connection with the negotiation, drafting and execution of this Settlement Agreement and Mutual Release, each of the Parties acknowledges that it has been represented by its own separate and independent legal counsel, and has been fully counseled with respect to the import hereof.

6.3     <u>Binding Agreement</u>.  This Settlement Agreement and Mutual Release shall be binding upon and inure to the benefit of the successors of all Parties but nothing herein shall permit any of the Guarantors to assign any of its obligations hereunder.

6.4     <u>Interpretation: Separatability</u>.  Each provision of this Settlement Agreement and Mutual Release shall be interpreted in such manner as to be effective and valid under applicable

4

law, but if any provision hereof is held to be prohibited by or invalid under applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity, and shall not be deemed to invalidate the remainder of such provision or the remaining provisions hereof, so long as the intent of this agreement can be maintained.

6.5   Amendment.   This Settlement Agreement and Mutual Release shall not be modified in any way unless any such modification, amendment, addendum or supplement is in writing and is signed by all the Parties to this Settlement Agreement and Mutual Release.

6.6   Attorneys' Fees.   The Parties shall each bear their own respective attorneys' fees and costs in connection with the preparation and execution of this Settlement Agreement and Mutual Release. Guarantors agree to pay or reimburse Holder for all of its reasonable costs and expenses, including, without limitation, reasonable fees and expenses of its attorneys, incurred in connection with the successful enforcement or preservation of any of Holder's rights under this Settlement Agreement and Mutual Release.

6.7   Notices.   All notices, requests, certifications, demands or other communications related in any way to this Settlement Agreement and Mutual Release shall be in writing and shall be delivered personally or by reputable overnight courier or facsimile, with all charges prepaid, to the addresses specified below or such other address as may be designated in writing by notice given in the manner herein provided:

If to Holder or Linc:

> Linc Acquisition One, LLC
> Attention:  Paul Rouse, Asset Manager
> 3300 S. Parker Road, Suite 500
> Aurora, CO  80014
> Phone:  303-923-2170
> Fax:  303-923-2197

If to any one or all of the Guarantors:

> at the address below all of the Guarantor's signatures

with a copy to:

> Arnold & Porter LLP
> 555 Twelfth Street, N.W.
> Washington, DC  20004
> Phone: 202-942-5554
> Fax:   202-942-5999

If delivered personally, such notice shall be deemed to be effective upon receipt. If notice is given by a reputable nationwide overnight courier, such notice shall be deemed to be effective

5

one (1) business day following deposit with the courier. If by facsimile, such notice shall be deemed to be effective two (2) business days following the sending of the facsimile.

6.8   No Assignment. Each of the Guarantors and Holder warrant that no other person or entity has any interest in the Claims referred to in this Settlement Agreement and Mutual Release, and each warrants that it has not sold, assigned, transferred, or otherwise conveyed any Claims addressed by this Settlement Agreement and Mutual Release.

6.9   No Duress. Each of the Guarantors warrants that he has not, and Holder warrants that it has not, been coerced into this Settlement Agreement and Mutual Release or subjected to economic duress in connection herewith by conduct of the other Party. The Parties have participated jointly in the negotiation and drafting of this Settlement Agreement and Mutual Release. In the event an ambiguity or question of intent or interpretation arises, this Settlement Agreement and Mutual Release shall be construed as if drafted jointly by the Parties and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any of the provisions of this Settlement Agreement and Mutual Release.

6.10   Governing Law. This Settlement Agreement and Mutual Release shall be governed by and construed in accordance with the domestic laws of the State of New York without giving effect to any choice or conflict of law provision or rule (whether of the State of New York or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than New York.

6.11   Submission to Jurisdiction; Waiver to Certain Objections; Jury Trial. The parties irrevocably submit to the jurisdiction of the state courts of the State of New York located in the County of New York and of the United States District Court for the Southern District of New York in connection with any action, suit or proceeding relating to this Agreement and waive any objection to the laying of venue of any such action, suit or proceeding brought in any such court and any claim that any action, suit or proceeding brought in any such court has been brought in an inconvenient forum. The parties hereby waive any right to a trial by jury in any action or proceeding out of or relating to this Agreement.

6.12   Counterparts. This Settlement Agreement and Mutual Release may be executed in multiple counterparts, each of which shall be deemed an original agreement and all of which shall constitute one agreement between the Parties, notwithstanding that all of the parties are not signatories to the original or the same counterpart. This Settlement Agreement and Mutual Release shall be effective immediately upon the exchange by facsimile of an executed counterpart by each of the parties, which counterpart shall be initialed at the bottom of each page as well as signed at the end.

6.13   Authority. Holder represents that Robert S. Possehl has full corporate power and authority to sign this Settlement Agreement and Mutual Release on behalf of Holder.

6

6.14   _Cooperation; Books and Records_.  Each party will reasonably cooperate with the other regarding the Reorganization by providing relevant information in their possession, custody or control.

**IN WITNESS WHEREOF,** this Settlement Agreement and Mutual Release has been executed as of the date and year first set forth above.

LINC ACQUISITION ONE, LLC.

By: _____
        Robert S. Possehl
        Its: Vice President

GUARANTORS:

_____
Joseph J. Bianco
130 Fifth Avenue, 7th Floor
New York, New York 10011
Phone: 212-433-1885
Fax:    212-414-3231

_____
Bruce Raben
9601 Wilshire Blvd., Penthouse
Los Angeles, CA  90210
Phone:  310-691-8760
Fax:     310-691-8758

_____
Manuel Fernandez
650 Water Street, SW
Washington, DC  20024
Phone:  202-554-2500
Fax:     202-863-1164

_____
Craig Ellins
3035 East Patrick, Suite 1
Las Vegas, NV  89120
Phone:  702-938-9271
Fax:     775-860-0318

7

6.14   <u>Cooperation: Books and Records</u>. Each party will reasonably cooperate with the other regarding the Reorganization by providing relevant information in their possession, custody or control.

IN WITNESS WHEREOF, this Settlement Agreement and Mutual Release has been executed as of the date and year first set forth above.

LINC ACQUISITION ONE, LLC.


By: _____
          Robert S. Possehl
          Its: Vice President



GUARANTORS:


_____
Joseph J. Bianco
130 Fifth Avenue, 7th Floor
New York, New York 10011
Phone: 212-433-1885
Fax:    212-414-3231

_____
Bruce Raben
9601 Wilshire Blvd., Penthouse
Los Angeles, CA 90210
Phone: 310-691-8760
Fax:    310-691-8758


_____
Manuel Fernandez
650 Water Street, SW
Washington, DC 20024
Phone: 202-554-2500
Fax:    202-863-1164

_____
Craig Ellins
3035 East Patrick, Suite 1
Las Vegas, NV 89120
Phone: 702-938-9271
Fax:    775-860-0318

6.14  <u>Cooperation: Books and Records</u>.  Each party will reasonably cooperate with the other regarding the Reorganization by providing relevant information in their possession, custody or control.

**IN WITNESS WHEREOF,** this Settlement Agreement and Mutual Release has been executed as of the date and year first set forth above.


LINC ACQUISITION ONE, LLC.


By: _____
         Robert S. Possehl
         Its: Vice President



GUARANTORS:



_____          _____
Joseph J. Bianco                                           Bruce Raben
130 Fifth Avenue, 7th Floor                          9601 Wilshire Blvd., Penthouse
New York, New York 10011                          Los Angeles, CA  90210
Phone: 212-433-1885                                   Phone: 310-691-8760
Fax:    212-414-3231                                     Fax:    310-691-8758



_____          _____
Manuel Fernandez                                        Craig Ellins
650 Water Street, SW                                   3035 East Patrick, Suite 1
Washington, DC  20024                               Las Vegas, NV  89120
Phone:  202-554-2500                                  Phone:  702-938-9271
Fax:    202-863-1164                                     Fax:    775-860-0318



7

6.14    Cooperation; Books and Records. Each party will reasonably cooperate with the other regarding the Reorganization by providing relevant information in their possession, custody or control.

IN WITNESS WHEREOF, this Settlement Agreement and Mutual Release has been executed as of the date and year first set forth above.

LINC ACQUISITION ONE, LLC.

By: _____
        Robert S. Possehl
        Its: Vice President


GUARANTORS:


Joseph J. Bianco                                    Bruce Raben
130 Fifth Avenue, 7th Floor                         9601 Wilshire Blvd., Penthouse
New York, New York 10011                            Los Angeles, CA 90210
Phone: 212-433-1885                                 Phone: 310-691-8760
Fax:    212-414-3231                                Fax:    310-691-8758


Manuel Fernandez                                    Craig Ellins
650 Water Street, SW                                3035 East Patrick, Suite 1
Washington, DC 20024                                Las Vegas, NV 89120
Phone: 202-554-2500                                 Phone: 702-938-9271
Fax:    202-863-1164                                Fax:    775-860-0318


7

6.14   <u>Cooperation; Books and Records</u>.  Each party will reasonably cooperate with the other regarding the Reorganization by providing relevant information in their possession, custody or control.

IN WITNESS WHEREOF, this Settlement Agreement and Mutual Release has been executed as of the date and year first set forth above.

LINC ACQUISITION ONE, LLC.


By: _____
          Robert S. Possehl
          Its: Vice President



GUARANTORS:



_____
Joseph J. Bianco
130 Fifth Avenue, 7th Floor
New York, New York 10011
Phone: 212-433-1885
Fax:    212-414-3231


_____
Manuel Fernandez
650 Water Street, SW
Washington, DC 20024
Phone: 202-554-2500
Fax:    202-863-1164


_____
Bruce Raben
9601 Wilshire Blvd., Penthouse
Los Angeles, CA 90210
Phone: 310-691-8760
Fax:    310-691-8758


_____
Craig Ellins
3035 East Patrick, Suite 1
Las Vegas, NV 89120
Phone: 702-938-9271
Fax:    775-860-0318


7

EXECUTION COPY

## PROMISSORY NOTE

September 15, 2005
New York, New York

FOR VALUE RECEIVED (as more specifically provided in that Settlement Agreement
and Mutual Release of even date herewith by and between the parties; the "Settlement
Agreement"), **JOSEPH J. BIANCO, BRUCE RABEN, MANUEL FERNANDEZ AND
CRAIG ELLINS** (collectively "Maker") hereby jointly and severally promise to pay to the order
of Linc Acquisition One, LLC, a limited liability company organized under the laws of the State of
Delaware ("Holder") at its offices at 3300 S. Parker Road, Suite 500, Aurora, CO  80014,
Attention: Paul Rouse, and its successors and assigns, the principal sum of Three Hundred
Thousand ($300,000.00) Dollars, together with interest according to the following terms and
conditions:

1. <u>Payments and Terms.</u>  Maker shall pay monthly to Holder the sum of Nine Thousand
($9,000.00) Dollars until its obligation hereunder is satisfied in full.  The initial payment shall be
made no later than November 1, 2005, with all future payments due and to be made on the
sequential, monthly anniversary dates of the initial payment.

2. <u>Interest Rate</u>.  This Note shall bear interest on the outstanding principal at the annual
rate of eight and one-half (8.5%) percent.

3. <u>Application of Payments</u>.  Payments received under this Note (including prepayments)
shall be applied first to accrued interest and then to installments of principal, in inverse order of
their maturity dates.  Notwithstanding the previous sentence, Holder shall have the right, at its
sole option, to apply any payment received under this Note first to any late fees, collection or
other expenses to which Holder may be entitled under this Note.  The making of any partial pre-
payment shall not change the due dates or amounts of monthly installment payments next becom-
ing due, but shall only change the allocations of future payments of interest and principal based on
such prepayment and produce possibly an earlier payoff date on this Note.

4. <u>Late Fee</u>.  If any payment is not received by Holder within fifteen (15) days following
its due date, Holder, without limiting any right or remedy under this Note, may charge a late fee
equal to four percent (4%) of the total amount overdue.

5. <u>Prepayments</u>.  Prepayment in whole or in part (but in amounts of not less than Nine
Thousand ($9,000.00) Dollars) of the amount due hereunder is permitted at any time and must be
accompanied by payment of all accrued interest on the amount being prepaid.

6. <u>Place and Manner of Payment</u>.  Payments under this Note are to be made in United
States currency at the offices of Holder listed in this Note or at such other location designated by

Holder.

7. <u>Defaults and Remedies</u>.  If Maker (a) fails to make any payment required hereunder or (b) fails to use commercially reasonable efforts to cause Newco to make any of the payments required to be made by Newco under the terms of the Settlement Agreement within fifteen (15) days following any of their respective due dates, or if the Guarantors (as defined in the Settlement Agreement) default as to any of their material obligations under the Settlement Agreement following written notice from Holder and a period of fifteen (15) days to cure such default, all sums outstanding under this Note may, at Holder's sole option, become immediately due and payable in full and shall bear interest from the date of such default until paid in full at the Default Interest Rate defined below.  The term "Default Interest Rate" means a rate of five (5%) percent in excess of the interest rate provided for in this Note.

8. <u>Governing Law</u>.  This Note shall be governed by and construed in accordance with the domestic laws of the State of New York without giving effect to any choice or conflict of law provision or rule (whether of the State of New York or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than New York.

9. <u>Submission to Jurisdiction; Waiver to Certain Objections; Jury Trial.</u>  Maker irrevocably submits to the jurisdiction of the state courts of the State of New York located in the County of New York and of the United States District Court for the Southern District of New York in connection with any action, suit or proceeding relating to this Note and waives any objection to the laying of venue of any such action, suit or proceeding brought in any such court and any claim that any action, suit or proceeding brought in any such court has been brought in an inconvenient forum.  The Maker hereby waives any right to a trial by jury in any action or proceeding out of or relating to this Note.

10. <u>Representation by Counsel</u>.  In connection with the negotiation, drafting and execution of this Note, Maker acknowledges that it has been represented by its own separate and independent legal counsel, and has been fully counseled with respect to the import hereof.

11. <u>Interpretation; Separatability</u>.  Each provision of this Note shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision hereof is held to be prohibited by or invalid under applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity, and shall not be deemed to invalidate the remainder of such provision or the remaining provisions hereof, so long as the intent of this Note can be maintained.

12. <u>Attorneys' Fees</u>.  The parties shall each bear their own respective attorneys' fees and costs in connection with the preparation and execution of this Note.  Maker agrees to pay or reimburse Holder for all of its reasonable costs and expenses, including, without limitation, reasonable fees and expenses of its attorneys, incurred in connection with the successful enforcement or preservation of any of Holder's rights under this Note.

Page 3

13. Notices. All notices, requests, certifications, demands or other communications related in any way to this Note shall be in writing and shall be delivered personally or by reputable overnight courier or facsimile, with all charges prepaid, to the addresses specified below or such other address as may be designated in writing by notice given in the manner herein provided:

If to Holder:        Linc Acquisition One, LLC
                     Attention: Paul Rouse, Asset Manager
                     3300 S. Parker Road, Suite 500
                     Aurora, CO 80014
                     Phone: 303-923-2170
                     Fax: 303-923-2197

If to any one or all of the Makers:

                     at the address below all of the Maker's signature

        with a copy to:
                     Arnold & Porter LLP
                     555 Twelfth Street, N.W.
                     Washington, DC 20004
                     Phone: 202-942-5554
                     Fax:   202-942-5999

If delivered personally, such notice shall be deemed to be effective upon receipt. If notice is given by a reputable nationwide overnight courier, such notice shall be deemed to be effective one (1) business day following deposit with the courier. If by facsimile, such notice shall be deemed to be effective two (2) business days following the sending of the facsimile.

14. Interest Limits. If any provision of this Note relating to the rate of interest violates any applicable law in effect at the time payment is due, the interest rate then in effect shall be automatically reduced to the maximum rate then permitted by law. If for any reason Holder should receive as interest an amount that would exceed the highest applicable lawful rate of interest, the amount that would exceed that highest lawful rate shall be deemed to be credited against principal and not to the payment of interest.

15. Successors and Assigns. The obligations hereunder of Maker shall inure to the benefit of Holder and its successors and assigns. Maker shall not assign any of its obligations hereunder.

Page 4

16.  Special Provisions.  Section 1.6 of the Settlement Agreement references the  Bankruptcy Proceeding involving Hellonetwork.com, Inc.  The obligations of Maker hereunder shall in no way be affected, comprised or modified by the outcome of such Bankruptcy Proceeding, the obligations of Maker hereunder being totally independent of such Bankruptcy Proceeding except that a default under the Settlement Agreement shall constitute a default under this Note .

Page 5

IN WITNESS WHEREOF, the undersigned have caused this Note to be duly executed on the date first written above.

WITNESS:

<br>

**JOSEPH J. BIANCO**
130 Fifth Avenue, 7th Floor
New York, NY 10011
Ph: 212-433-1885
Fax: 212-414-3231

WITNESS:

<br>

**BRUCE RABEN**
9601 Wilshire Blvd., Penthouse
Los Angeles, CA 90210
Ph: 310-691-8760
Fax: 310-691-8758

WITNESS:

<br>

**MANUEL FERNANDEZ**
650 Water Street, SW
Washington, DC 20024
Ph: 202-554-2500
Fax: 202-863-1164

WITNESS:

<br>

**CRAIG ELLINS**
3035 East Patrick, Suite 1
Las Vegas, NV 89120
Ph: 702-938-9271
Fax: 775-860-0318

Page 5

IN WITNESS WHEREOF, the undersigned have caused this Note to be duly executed on the date first written above.

WITNESS:

_____
JOSEPH J. BIANCO
130 Fifth Avenue, 7th Floor
New York, NY 10011
Ph: 212-433-1885
Fax: 212-414-3231

_____
WITNESS:

_____
BRUCE RABEN
9601 Wilshire Blvd., Penthouse
Los Angeles, CA 90210
Ph: 310-691-8760
Fax: 310-691-8758

_____
WITNESS:

_____
MANUEL FERNANDEZ
650 Water Street, SW
Washington, DC 20024
Ph: 202-554-2500
Fax: 202-863-1164

_____
WITNESS:

_____
CRAIG ELLINS
3035 East Patrick, Suite 1
Las Vegas, NV 89120
Ph: 702-938-9271
Fax: 775-860-0318

_____

Page 5

IN WITNESS WHEREOF, the undersigned have caused this Note to be duly executed on the date first written above.

WITNESS:

_____

**JOSEPH J. BIANCO**
130 Fifth Avenue, 7th Floor
New York, NY 10011
Ph: 212-433-1885
Fax: 212-414-3231

WITNESS:

_____

**BRUCE RABEN**
9601 Wilshire Blvd., Penthouse
Los Angeles, CA 90210
Ph: 310-691-8760
Fax: 310-691-8758

WITNESS:

_____

**MANUEL FERNANDEZ**
650 Water Street, SW
Washington, DC 20024
Ph: 202-554-2500
Fax: 202-863-1164

WITNESS:

_____

**CRAIG ELLINS**
3035 East Patrick, Suite 1
Las Vegas, NV 89120
Ph: 702-938-9271
Fax: 775-860-0318

Page 5

     IN WITNESS WHEREOF, the undersigned have caused this Note to be duly executed on the date first written above.

WITNESS:

_____

**JOSEPH J. BIANCO**
130 Fifth Avenue, 7th Floor
New York, NY 10011
Ph: 212-433-1885
Fax: 212-414-3231

WITNESS:

_____

**BRUCE RABEN**
9601 Wilshire Blvd., Penthouse
Los Angeles, CA 90210
Ph: 310-691-8760
Fax: 310-691-8758

WITNESS:

_____

**MANUEL FERNANDEZ**
650 Water Street, SW
Washington, DC 20024
Ph: 202-554-2500
Fax: 202-863-1164

WITNESS:

_____

**CRAIG ELLINS**
3035 East Patrick, Suite 1
Las Vegas, NV 89120
Ph: 702-938-9271
Fax: 775-860-0318